UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07CV99-3-W
(3:03CR151-3-O)

| | | |
|---|---|---|
| JOELL A. LEWIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on initial review of Petitioner's Motion to Vacate, Set Aside, Or Correct Sentence under 28 U.S.C. § 2255, (Document No. 1) filed March 3, 2006. For the reasons stated herein, Petitioner's Motion to Vacate will be denied and dismissed.

### 1. FACTUAL AND PROCEDURAL BACKGROUND

A review of the record reveals that Petitioner was convicted on November 3, 2004, following a jury trial, of conspiracy to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine powder. A presentence (PSR) was prepared by the probation office in preparation for sentencing. Petitioner filed two objections to the PSR: (1) that there were not actually six kilograms of cocaine, but rather six kilograms of powder with paper strips containing cocaine inserted in them by the police; (2) that the quantity of sham cocaine was increased from two kilograms to six kilograms on the undercover agent's initiative and therefore constituted sentencing entrapment, meaning that Petitioner should not have been held accountable for that quantity of cocaine. The probation officer, in his Addendum to the PSR, rejected Petitioner's

1

objections. At sentencing, Petitioner agreed that he would preserve the issues for appeal and presented no further argument. On June 7, 2005 the Honorable William L. Osteen, visiting judge from the Middle District of North Carolina, sentenced Petitioner to the mandatory minimum sentence of 120 months imprisonment to be followed by five years of supervised release.[1]

Petitioner filed a notice of appeal on August 1, 2005. In his appeal, Petitioner raised a sufficiency of the evidence claim arguing that there was insufficient evidence presented by the government at trial that Petitioner entered into an agreement to possess with intent to distribute five kilograms or more of cocaine. Petitioner also argued on appeal that the Government engaged in sentence manipulation by increasing the quantity of cocaine it sought to sell from two or three kilograms to six kilograms thereby subjecting Petitioner to a mandatory minimum sentence of ten years. On June 6, 2006 the Fourth Circuit Court of Appeals issued an unpublished opinion affirming Petitioner's conviction and sentence. (United States v. Joell Lewis, No. 05-4804, 4th Cir. June 6, 2006). The Court considered the evidence presented at trial and concluded that substantial evidence supported the jury's verdict and that Petitioner conspired to distribute five kilograms or more of cocaine. The Court also declined to adopt Petitioner's sentencing manipulation theory and determined that there was no error in Petitioner's sentence. Petitioner filed a writ of certiorari in the United States Supreme Court which was denied on October 17, 2006.

On March 6, 2007 Petitioner filed the instant Motion to Vacate alleging that: 1) his trial attorney was ineffective for failing to advise the Court that United States Sentencing Guideline, Amendment 640 applied to Petitioner's case which would have resulted in a two level decrease in Petitioner's base offense level and 2) counsel was ineffective at sentencing and on appeal for failing

---

[1] 21 U.S.C. § 841(b)(1)(A).

to raise United States Sentencing Guideline Amendment 484 which would have decreased the amount of drugs for which Petitioner was convicted thereby reducing his sentence.

## II. STANDARD OF REVIEW

Petitioner's contention that he received ineffective assistance of counsel is governed by the holding in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, and that there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 856 (1995). Petitioner bears the burden of proving Strickland prejudice. Fields 956 F.2d at 1297. It petitioner fails to meet this burden, a "reviewing court need not consider the performance prong. Id. at 1290.

## III. Analysis

A**. Defense Counsel's Failure to Advise the Court of Amendment 640 Was Not Ineffective**

Petitioner contends that his trial attorney was ineffective for failing to advise the Court that United States Sentencing Guideline, Amendment 640 applied to Petitioner's case which would have resulted in a two level decrease in Petitioner's base offense level. As best this Court can understand Petitioner's argument, he seems to be arguing that § 2D1.1(3) (2004)[2] of the Sentencing Guidelines should have applied in his case with respect to sentencing.

---

[2] Amendment 640 of the Sentencing Guidelines was incorporated into § 2D1.1(3).

Assuming that § 2D1.1(3) would apply to Petitioner's case, Petitioner cannot prevail unless he can also show prejudice for his counsel's alleged deficient performance. Section 2D1.1(3) of the Sentencing Guidelines states that if a defendant receives an adjustment under 3B1.2 and the base offense level under subsection (c) is level 32, the base offense level should be decreased by two levels. Petitioner's base offense level was 32 and Petitioner did receive an adjustment under 3B1.2 for mitigating role. With these calculations, Petitioner's adjusted offense level was a 30 and his criminal history points placed him in criminal history category II resulting in a guideline range of 108-135 months. Petitioner received a mandatory minimum sentence of 120 months.

Giving the Petitioner the benefit of the doubt that he should have been sentenced under § 2D1.1(a)(3), his base offense level of 32 would have been reduced by two levels resulting in a base offense level of 30 and then he would have received the adjustment under 3B1.2 for his mitigating role, resulting in an adjusted base offense level of 28 and a criminal history category II, with a range of 87-108 months. However, Petitioner can show no prejudice for his trial counsel's purported failure to argue for the applicability of 2D1.1(a)(3) because his sentence was governed by the statutory mandatory minimum of 120 months which is the sentence he received. 21 U.S.C. § 841(b)(1)(A). Stated another way, even if Petitioner was sentenced according to § 2D1.1(a)(3), he would have still received at least 120 months, notwithstanding the guideline range of 87 - 108 months, because the quantity of drugs he was convicted of is subject to a statutory mandatory minimum sentence of 120 months. Therefore, Petitioner cannot prevail on this ineffective assistance of counsel claim because he cannot establish any prejudice from his counsel's failure to argue the applicability of § 2D1.1(a)(3). Simply stated, Petitioner could not have received less than 120 months imprisonment. Petitioner has not established prejudice under <u>Strickland</u>, therefore his

4

ineffective assistance of counsel claim is dismissed.

**B. United States Sentencing Guideline Amendment 484 Does Not Apply to Petitioner's Case**

Petitioner claims that counsel was ineffective at sentencing and on appeal for failing to raise United States Sentencing Guideline Amendment 484 [3] which would have decreased the amount of drugs for which Petitioner was convicted thereby reducing his sentence. Petitioner is incorrect. Amendment 484 is not applicable to his case.

Petitioner was convicted of conspiracy to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine powder. In order to prove the conspiracy in this case, the Government had to prove three elements. First, that there was an agreement between two or more persons to possess with intent to distribute 5 kilograms or more of cocaine. Second, that the defendant knew of the conspiracy and third, that defendant knowingly and voluntarily became part of the conspiracy. United States v. Wilson, 135 F.3d 291, 306 (4th Cir.) cert. denied, 523 U.S. 1143 (1998); United States v. Burgos, 94 F.3d 849 (4th Cir. 1996). The fact that there was a reverse sting operation in this case resulting in the use of "sham" cocaine, which was part cocaine and part white powdery substance, is of no consequence to defendant's agreement to possess with intent to distribute 5 kilograms or more of cocaine. United States v. Fletcher, 945 F.2d 725 (4th Cir. 1991) (conviction for attempted distribution of PCP upheld even though what was actually distributed was not PCP or any other drug); United States v. Sanchez-Berrios, 424 F.3d 65, 78 (1st Cir. 2005) (use of sham cocaine had no effect on underlying conspiracy conviction); United States v. Pennell, 737 F.2d 521 525 (6th Cir. 1984) (the purchase of a noncontrolled substance that

---

[3] Amendment 484, which became effective on November 1, 1993 and can be found in Application Note 1 to 2D1.1, deals with the meaning of "mixture or substance" as used in 2D1.1.

5

the defendant subjectively believed to be a controlled substance can constitute an attempt to possess with intent to distribute under § 846); United States v. Everett, 700 F.2d 900, 907-08 (3d Cir. 1983) (Congress intended to eliminate the impossibility defense in cases prosecuted under 21 U.S.C. §§ 841(a)(1) and 846). A culpable conspiracy may exist even though the conspirators misapprehend certain facts. United States v. Waldron, 590 F.2d 33,34 (1st Cir. 1979). "It is . . . elementary that one may be a member of a conspiracy without knowing its full scope, or all of its members, and without taking part in the full range of its activities or over the whole period of its existence." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993). Even if the substantive crime that is the object of the conspiracy is impossible to achieve, the conspiracy nonetheless qualifies as an offense for which a person may be prosecuted. Id. Defendants convicted of conspiracy "should be sentenced not only on the basis of his conduct, but also on the basis of the conduct of co-conspirators that was known to the defendant or reasonably foreseeable to him." United States v. Williams, 986 F.2d 86, 90-91 (4th Cir. 1993.) In determining drug quantities, negotiated but undelivered amounts may be included and this includes quantities of drugs to be sold to, or purchased from, undercover government agents. United States v. Brooks, 957 F.2d 1138, 1150-52. Here, the jury found Petitioner guilty of the conspiracy offense and the Court sentenced Petitioner to the mandatory minimum of 120 months imprisonment.[4]

Section 2D1.1 of the Sentencing Guidelines requires that the base offense level be calculated on the "entire weight of any mixture or substance containing a detectable amount of the controlled substance." See U.S.S.G. § 2D1.1, Note A. Such mixture or substance does not include" materials

---

[4] The Fourth Circuit affirmed Petitioner's conviction and sentence. Specifically, the Fourth Circuit found that there was substantial evidence to support the jury's verdict and rejected Petitioner's argument that the Government engaged in sentence manipulation.

that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. 2D1.1, Application Note 1. However, the examples provided in application note 1 include separating the fiberglass from a cocaine/fiberglass bonded suitcase and beeswax from a cocaine/beeswax statute, see id., and are inapplicable to the facts of the instant case.[5]

Application note 12, which specifically applies to the facts of this case, states that "[i]n an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense." The note provides an example which is specifically on point to the facts of the instant case. Th example states "in a reverse sting, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not the defendant." Application note 12 with the example regarding the reverse sting is specifically applicable to the instant case in that the undercover operative agreed along with the Petitioner and his co-conspirator to sell to Petitioner and his co-conspirator six kilograms of cocaine so that Petitioner and his co-conspirator could the distribute the cocaine. In such a situation, application note 12 specifically

---

[5] Amendment 484 specifies two types to which the amendment applies. The first is in cases involving a controlled substance bonded to, or suspended in, another substance; however the controlled substance is not usable until it is separated from the other substance (cocaine mixed with beeswax) . See United States v. Mahecha-Onofre, 936 F.2d 623 (1st Cir.), cert. denied, 123 S. Ct. 648 (1991). The second case in which the need for this amendment has arisen involves the waste produced from an illicit laboratory used to manufacture a controlled substance or chemicals confiscated before the chemical processing of the controlled substance is completed. The waste product is not consumable and the chemicals seized before the end of processing are not usable in that form because further processing must take place before it can be used. See, United States v. Sherrod, 964 F.2d 1501 (5th Cir.), cert. denied sub nom. Cooper v. United States, 113 S. Ct. 832 (1992) (White and Blackmun, JJ., dissenting from denial of cert.), and cert. denied sub nom. United States v. Sewell, 113 S.Ct. 1367 (1993) (White and Blackmun, JJ., opinion dissenting form denial of cert.).

directs the Court to sentence defendant using the agreed-upon quantity of the controlled substance. Here, the evidence at trial established that the agreed-upon quantity of the controlled substance was approximately 6 kilograms of cocaine.[6]

Petitioner's argument that his counsel was ineffective due to his failure to argue that Amendment 484, or 2D1.1 application note 1, would have changed his base offense level is simply not a correct statement of the law. As discussed above, application note 1 is not applicable to the facts of the instant case. Application note 12, which specifically discusses a reverse-sting operation, directs the Court to sentence a defendant based on the amount the agreed-upon quantity of the controlled substance, which is how the Court sentenced Petitioner. Because application note 1 is not applicable the facts of the instant case, Petitioner has not established either prong of the Strickland test. Therefore, Petitioner's counsel was not ineffective and Petitioner's claims must be dismissed.

## IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate is **DENIED AND DISMISSED.**

Signed: March 25, 2007

Frank D. Whitney
United States District Judge

---

[6] The sham cocain, which was a mixture of a white powdery substance and cocaine, weighed 6.51903 kilograms (Trial transcript at 124.)

8